[No. 35625. *En Banc.* June 8, 1961.]

IRVIN GREEN, *Appellant,* v. BILES-COLEMAN LUMBER COMPANY *et al., Respondents.**

*J. D. McCallum* and *R. E. Mansfield,* for appellant.

*Earl K. Nansen,* for respondents.

HILL, J.—The only assignments of error on this appeal are: that the trial court erred in concluding that the plaintiff was negligent in the manner in which he was driving fifty-nine head of cattle along the highway; and, that the trial court erred in concluding that the plaintiff's negligence, if any, was a proximate cause for the killing of five and the injuring of five of his cattle.

The trial court's findings of evidentiary facts are admitted; the appellant urges only that the facts, as found, do not establish the ultimate conclusion of contributory negligence.

There was formerly a statute which gave cattle the right-of-way upon the highways of this state. This statute was repealed in 1937. The only statute which now deals with cattle on highways is RCW 16.24.070, which is limited in its application to "stock restricted areas." This statute was discussed recently in *Burback v. Bucher* (1960), 56 Wn. (2d) 875, 355 P. (2d) 981. We are here concerned with an unrestricted area, or range country, where cattle may run at large. And, although, as we said in *Burback v. Bucher, supra,* "The owners of cattle have a fundamental and historic right to the use of the highways," this right does not excuse the owner of cattle (being driven on the highway) from the obligation of due care. *Frowd v. Marchbank* (1929), 154 Wash. 634, 283 Pac. 467. The question here is whether we can say, as a matter of law, that the plaintiff used reasonable care to protect his cattle from injury, while exercising his right to drive them on the highways, and, hence, was not contributorily negligent.

The defendants, a logging-truck driver and his employer, were concededly negligent because the driver was hurtling his thirty-ton juggernaut at a speed of thirty-five miles an

hour down a grade on a road that was slushy and slippery, knowing that cattle might be on the road.

■ We must, however, agree that the trial court was entitled to conclude that for the plaintiff to attempt to move fifty-nine head of cattle for a "mile and a half or three quarters" along a curving highway, which he knew was frequently used by logging trucks, without any assistance (when another man was available to help him), constituted contributory negligence.

The trial court also concluded that a warning should have been given to approaching motorists. It is conceded that the plaintiff was not legally obligated to give advance warning of the herd's approach; the question is: Would a reasonable man, under the circumstances, have sent his employee (who was driving a truck) up the road a quarter or half a mile ahead of the herd to give approaching motorists, coming down the grade, warning that the cattle were on the highway?

The trial court was, further, entitled to conclude that the plaintiff was contributorily negligent in that, with his herd strung out along the highway for three hundred and twenty-five feet, he permitted some of the cattle at the rear of the herd, and just ahead of him, to cover all of the traveled-portion of the highway; and in that he made no attempt to break up this group of cattle nor to get them off of the highway when he became aware of the approach of the logging truck.

It is to be noted that the plaintiff could hear the truck coming "for a long ways" before he could see it, and he knew it was traveling "faster than it should be coming." The plaintiff first saw the truck some two hundred feet before it came abreast of any of the cattle, which were stretched out along the south side of the highway, or in the east-bound traffic lane, for a distance of three hundred and twenty-five feet ahead of the group of cattle at the rear of the herd with which the truck ultimately collided. Despite the fact that the plaintiff saw its approach for five hundred and twenty-five feet before the collision and heard it coming "for a long ways" before he could see it,

he made no attempt to clear the road but "got out of the way with the horse as far off" as he could get.

■ There is no dispute in the evidence. The appellate function is solely to determine whether the trier of the facts was entitled to draw the inference of contributory negligence therefrom. It is not our function to "second guess" the trial court, if there was a permissible inference of contributory negligence from the evidence. We are satisfied that the trial court could conclude from the evidence that there was contributory negligence on the part of the plaintiff.

The judgment of dismissal is affirmed.

FINLEY, C. J., MALLERY, DONWORTH, and ROSELLINI, JJ., concur.

FOSTER, J. (dissenting)—In appellant's action for the destruction of a number of his cattle by the respondent company's loaded logging rig, the court decides that the appellant's contributory negligence is a bar. I cannot agree for three reasons:

(1) There is no duty on the part of one driving cattle along the highway to warn in advance of the herd's movement;

(2) Advance notice by a flagman would have added nothing because the respondent driver, at the time of the accident, had actual knowledge in time to have avoided the accident; and

(3) Because of the certainty of the heavily loaded logging truck and trailer jackknifing when the air brakes were applied, it was perilous for anyone to have been on the slick, snow-covered highway.

The accident occurred on a county road near Nespelem in Okanogan county. Appellant was moving his herd of fifty-nine cattle a distance of one and three-quarters miles from pasture to winter feeding grounds, but the distance traveled at the time of the accident does not appear.

Respondents' truck and heavily loaded trailer, equipped with air brakes, was descending a grade of five or six per cent while the cattle were being driven in the opposite

direction. The tare weight of the load of logs was in excess of thirty tons. Respondent driver testified that his speed did not exceed thirty-five miles per hour, while appellant placed it at fifty miles per hour.

The testimony respecting the distance required to stop took a wide range, nevertheless, the findings of fact, set out in the margin,[1] are that the respondent driver saw the cattle more than two hundred feet away before he passed the first animal, and that he traveled three hundred twenty-five feet thereafter before the first impact, a total of five hundred twenty-five feet, but it required an additional three hundred forty-five feet within which to bring this "thirty-ton juggernaut" to a stop, a total distance of eight hundred seventy feet. Whether respondent driver saw the herd before or after he passed the point where it was to leave the road does not appear.

Dense fog enveloped the road in spots, but, at the point of the accident, atmospheric conditions were clear. The highway was covered with four inches of wet snow. One

[1]". . . That the defendants were at all times aware that at the time and place of the accident cattle were likely to be running at large on the highway, and that that highway was used by the ranchers in that vicinity for driving cattle on foot. That the plaintiff was an experienced rancher and cattleman, with knowledge of the habits of cattle being driven on the highway, and that they would obstruct the highway, and he knew that that highway was being used at that time by the defendants, and by others for hauling logs, and that it was probable that loaded logging trucks would be encountered while driving said cattle along said road. That the surface of the roadway was covered with several inches of wet snow, and was slippery for vehicles. That there were patches of fog near the scene of the collision, and easterly and above the scene the highway was covered with fog, but at the scene and adjacent thereto the fog did not obscure the vision of the defendant Fateley, who had full visibility of all the cattle and the roadway from a point approximately 200 feet in advance of passing the nearest cow and thence for approximately 325 feet more to the collision, and beyond. That the defendant Fateley was operating said truck, loaded with about 30 tons of logs, at a speed of 35 miles per hour, down a grade, and he attempted to stop when about 200 feet from the herd but was unable to stop, and continued on down grade and on his westbound right hand half of the roadway approximately 325 feet past most of the herd, into collision with the bunch at the rear of the herd and continued on to a stop on the right hand side of the highway approximately 345 feet beyond the point of collision."

of the respondent's drivers who was at the scene of the accident testified that the snow on the road was "just plumb packed and slick" on which it was impossible to stop even a passenger car.

The court found,[1] and it is not open to dispute, that the point at which the accident happened was open range, that cattle were habitually moved on the road, and that the area was posted with signs to beware of cattle, of which the respondents were well aware.

It is the unchallenged finding that the proximate cause of the accident was that respondent driver did not have his truck and trailer under control. One of the respondent's drivers testified that if the air brakes were applied, under the prevailing circumstances, the truck would certainly jackknife broadside of the highway. Under such circumstances, any reasonable individual would have made certain he was off of the eighteen-foot road. The appellant did so when he heard the truck at a distance before it became visible.

Under the facts found, the conclusion that the appellant was contributorily negligent and that such contributory negligence was a proximate cause of the accident does not follow because respondent driver had actual knowledge of the herd in time to avoid the accident had the loaded logging truck and trailer been under control. Lack of control was the sole proximate cause.

There is neither statute nor decisional law requiring one moving cattle on a road through open range country to give advance warning of the herd's approach. The applicable law is to the contrary:

"In the absence of statute there is no duty on the part of a person driving cattle in the highway to maintain an advance guard to herald the approach of cattle." 3 Blashfield, Cyclopedia of Automobile Law & Practice (Perm. ed.) 4, 5, § 1612.

I would reverse the judgment.

WEAVER, OTT, and HUNTER, JJ., concur with FOSTER, J.

---

August 21, 1961. Petition for rehearing denied.