WILLIAM DWIGHT HART, d/b/a Double HH Farms, Plaintiff-Appellee, v. STEVEN MEREDITH, Defendant-Appellant.

Third District   No. 3—89—0323

Opinion filed April 4, 1990.

Flack, Kwacala, Murphy & Ashenhurst, of Macomb (A. Anthony Ashenhurst, of counsel), for appellant.

March, McMillan & Stone, P.C., of Macomb (John D. McMillan, of counsel), for appellee.

JUSTICE WOMBACHER delivered the opinion of the court:

This action was brought to recover damages occasioned by the defendant's bull jumping a division fence. Summary judgment was granted in favor of the plaintiff on the issue of liability. The defendant appeals. We affirm.

The defendant and the plaintiff are occupiers of adjoining farm properties which are used by each party for pasture grazing cattle.

In September or October, 1986, the defendant constructed a division line fence between the two properties. The plaintiff was responsible for maintaining the west half of the fence, while the defendant was responsible for maintaining the east half of the fence.

On or about June 20, 1987, a bull owned by the defendant jumped over the east part of the division line fence. The bull "mashed" down part of the fence as it jumped over the fence. The bull then bred two of the plaintiff's purebred Angus cows, causing the plaintiff to lose the services of the cows in the plaintiff's embryo transplant breeding operation.

The plaintiff brought suit against the defendant, alleging that section 20 of "An Act to revise the law in relation to fences" (the Illinois Fence Law) (Ill. Rev. Stat. 1987, ch. 54, par. 1 *et seq.*) imposes strict liability upon a landowner when his animal jumps his portion of a lawful division fence and causes damage to the animals of an adjoining landowner. The defendant countered that the Illinois Fence Law and the Illinois Domestic Animals Running at Large Act (Animal Act) (Ill. Rev. Stat. 1987, ch. 8, par. 1 *et seq.*) should be construed *in pari materia* so as to hold the animal owner liable only if his portion of the division fence was not good or sufficient, or, in other words, was not a reasonable restraint.

The trial court granted summary judgment in favor of the plaintiff on the issue of liability. The court found that the Animal Act does not require the plaintiff to show negligence on the part of the defendant under section 20 of the Fence Law and does not relieve the defendant of the statutory liability imposed by section 20 of the Fence Law. The trial court made a finding pursuant to Illinois Supreme Court Rule 308 (107 Ill. 2d R. 308), and the defendant appeals.

The sole issue on appeal is whether the Illinois Fence Law imposes strict liability upon a landowner when his animal jumps his portion of a lawful division fence, causing damage to the animals of the adjoining landowner.

The Illinois Fence Law, section 20 (Ill. Rev. Stat. 1987, ch. 54, par. 20) states:

> "If any *** neat cattle *** or other domestic animals, shall break into any person's inclosure, the fence being good and sufficient, the owner of such animal *** shall be liable, in a civil action, to make good all damages to the owner *** of the inclosure."

In the instant case, it is undisputed that the fence was "good

and sufficient." The defendant, however, seeks to avoid the result mandated by the Illinois Fence Law. The defendant first contends that the bull did not "break" into the enclosure, and, therefore, on its face, the Fence Law does not apply to the instant case. The defendant apparently believes that for an animal to break into an enclosure, the animal must go through, rather than over, a fence. Because the bull didn't go through the enclosure, the defendant argues the Fence Law doesn't apply to this situation. Instead, the Illinois Animal Act applies. This act imposes a negligence standard, as differentiated from the Fence Law's absolute liability language.

▮▮ The defendant, however, overlooks the fact that the word "break" has many definitions. Webster's Third International Dictionary 271 (1976), defines "break" as "to force entry into" and "enter by force or violence." Clearly the bull forced its entry into the plaintiff's property. This is demonstrated by the fact that the bull "mashed" down part of the fence as it entered the plaintiff's pasture. We are of the opinion that the bull did break into the enclosure.

Second, the defendant argues that even if the bull's action could be construed as a breaking, reliance on *McKee v. Trisler* (1924), 311 Ill. 536, 143 N.E. 69, is misplaced due to changes in both the Fence Law and the Animal Act. The defendant maintains that *McKee* was decided when strict liability was the common law. Since then, the Animal Act was amended and now imposes a negligence standard for holding owners of animals liable when their animals run at large.

▮▮ The defendant is correct that there has been a change in the law. The adoption of section 1 of the Animal Act does signify a change from the law as it existed at the time of *McKee*. The defendant fails to note the additional sentence added to the Fence Law subsequent to the *McKee* decision. That sentence provides:

> "This Section shall not be construed to require such fence, in order to maintain an action for injuries done by animals running at large contrary to law." (Ill. Rev. Stat. 1987, ch. 54, par. 20.)

We believe this sentence was added to confirm that a landowner could hold a livestock owner liable under section 1 of the Animal Act for damages caused by animals running at large, even if he chose to leave his property unfenced.

We are of the opinion that there can only be one conclusion when the two statutes are read *in pari materia*. That is, that a livestock owner is liable under the Animal Act if he negligently al-

lows his livestock to run at large, regardless of the existence of any fence around the property of the damaged party and that a livestock owner is strictly liable under the Fence Law if his livestock enters a landowner's property enclosed with a good and sufficient fence.

For the reasons listed above, the decision of the circuit court of McDonough County is affirmed.

Affirmed.

HEIPLE, P.J., and SCOTT, J., concur.